**Opinion issued February 21, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00064-CR

_____

**JONCASEY ROWELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 299th District Court**
**Travis County, Texas\***
**Trial Court Case No. D-1-DC-16-300124**

---

### MEMORANDUM OPINION

Following his jury trial and conviction for murder, appellant JonCasey

Rowell contends that the trial court improperly denied his request for a jury

---

\*    The Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this Court. *See* TEX. GOV'T CODE § 73.001. We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

instruction on the lesser-included offense of criminally negligent homicide. Because the evidence, even when viewed in the light most favorable to Rowell, demands the conclusion that no rational jury could have found that he was unaware of the risk of death he created by bringing a loaded firearm to the victim's door for the self-expressed purpose of protecting himself, we affirm.

## Background

Appellant JonCasey Rowell found Monica Loera's prostitution advertisement and scheduled a meet up. When he arrived, Loera asked him why he did not bring a condom, so Rowell left the residence to go get one. As he was about to leave, he realized that he forgot his keys inside Loera's residence. Rowell went back inside and got his keys. He was outside and was about to leave again when he realized that he left his wallet inside. According to Rowell, he feared the dogs in Loera's residence and did not know who else was in the residence. So he grabbed a gun out of his vehicle, took the safety off, put the gun in the half-cock position, walked back to Loera's door, and knocked. Loera answered the door and yelled at him to leave. According to Rowell, Loera then lunged at him. He drew his gun, raised it up, and it fired. Loera died.

Following his arrest, the State charged Rowell with murder, and a jury trial ensued. At the close of evidence, Rowell asked for an instruction on the lesser-included offenses of manslaughter and criminally negligent homicide. He argued,

2

citing his expert's testimony, that the gun accidentally fired. Rowell's expert described a phenomenon known as a "false" half-cock position that rendered the gun unsafe and capable of shooting even though the gun is designed not to fire when in the half-cock position. According to Rowell's expert, when the gun is in the "false" half-cock position, simply jarring it can cause it to fire. The trial court granted his request on the manslaughter instruction but denied his request for an instruction on criminally negligent homicide. The trial court reasoned that by walking up to Loera's door with a firearm for the purpose of self-protection, he could not claim that he was unaware of the risk created by his actions. After deliberating, the jury found Rowell guilty of murder, and he was sentenced to twenty years' confinement. Rowell appeals.

## Analysis

In his sole point of error, Rowell maintains that the trial court erroneously denied his request for an instruction on the lesser-included offense of criminally negligent homicide. Courts apply a two-step analysis to determine whether a jury should be instructed on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The threshold question asks whether the requested offense is, as a matter of law, a lesser-included offense. *Id.* "If this threshold is met, the court must then consider whether the evidence shows that if the Appellant is guilty, he is guilty only of the lesser offense." *Id.* Because the sole

3

difference between criminally negligent homicide and murder is a less culpable mental state, the threshold inquiry is satisfied here. *See* TEX. PENAL CODE §§ 6.03(d), 19.05; TEX. CODE CRIM. PROC. art. 37.09(3). Accordingly, we turn to the whether the evidence permits a jury to conclude that Rowell is guilty only of criminally negligent homicide.[2]

In conducting the second step of the analysis, we view the facts in the light most favorable to the defendant's request, keeping in mind that a defendant may rely on "anything more than a scintilla of evidence" in requesting the instruction. *See Hall v. State*, 225 S.W.3d 524, 534–35 (Tex. Crim. App. 2007). Our analysis is guided by *Thomas v. State*, 699 S.W.2d 845 (Tex. Crim. App. 1985).

In that case, Thomas, following his conviction for voluntary manslaughter, argued that the trial court improperly denied his request for an instruction on criminally negligent homicide. *Id.* at 847. According to Thomas, the facts were as follows: After an argument with a restaurant owner who banned him from entering his establishment, Thomas went to his car to leave, but it would not start. *Id.* at 848. He then got out of the car to find help, and he put his gun in his pocket "for

---

[2]    The State argues that Rowell failed to preserve this argument for appeal. To preserve a challenge to a jury charge, a defendant must object to the court in writing. TEX. CODE CRIM. PROC. art. 36.14. The "in writing" requirement is satisfied if the objection is "dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury." *Id.* Rowell dictated an objection to the charge in front of the trial judge, the State's attorney, and the court reporter, and the trial court overruled his objection before giving the charge to the jury. Rowell's argument is preserved for appellate review.

protection." *Id.* at 848–49. The restaurant owner then approached Thomas and stated, "I told you never put your foot on or near my premises again and if you did, I was going to kill you." *Id.* at 849. Thomas saw that the restaurant owner's hand was in a fist, so he drew his gun, pointed it at the owner, and told him to stop. *Id.* But the owner continued his approach. *Id.* Thomas yelled for someone to call the police and started to back up. *Id.* The owner then grabbed at him, Thomas pushed back, and the gun fired. *Id.* Thomas claimed he did not know how the gun was fired and said that he feared for his life. *Id.* He also testified that he did not intend to shoot the restaurant owner, that it was an accident, and that it was in self-defense. *Id.*

In holding that the trial court properly denied Thomas's request for an instruction on criminally negligent homicide, the Court of Criminal Appeals acknowledged that it was "governed by the rule that as long as evidence from any source raises a defensive issue or raises an issue that a lesser included offense may have been committed, and a jury charge on the issues is properly requested, the issue must be submitted to the jury." *Id.* at 849. Nevertheless, it emphasized, not every case where the defendant points a loaded weapon at someone and claims that it accidentally fired requires an instruction on the lesser-included offense of criminally negligent homicide. *Id.* at 850. The Court held that Thomas consciously

disregarded a risk that his conduct may cause death and was "at least reckless." *Id.* at 850.

The Court's reasoning was straightforward. The difference between criminally negligent homicide and involuntary manslaughter is the mental state. For the former, the mental state is criminal negligence; for the latter, the mental state is recklessness. *Id.* at 849. Criminal negligence involves "inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof"; the key "is found in in the failure of the actor to perceive the risk." *Id.* (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). Recklessness involves "conscious risk creation, that is the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." *Id.* (quoting *Lewis*, 529 S.W.2d at 553)). The Court reasoned that Thomas's familiarity with guns, his not knowing whether the gun was loaded, and his decision to point the gun at the restaurant owner were, as a matter of law, indicative of his awareness and disregard of the risk he created by his conduct. *Id.* at 850.

*Thomas* controls here. Before Rowell would have been entitled to an instruction on criminally negligent homicide, he had to show that, based on the evidence, if he was guilty, he was guilty only of criminally negligent homicide; that is, he had to show that the evidence supported a theory that he was unaware of the risk of death he created by bringing the loaded, safety-disabled, half-cocked

6

gun to Loera's door. *See id.* at 849 (quoting *Lewis*, 529 S.W.2d at 553)). Rowell failed to make that showing.

First, Rowell was familiar with firearms; he testified that he had taken special firearms safety courses, he had a concealed-carry license, he knew a loaded firearm with its safety off is "ready to shoot," he knew not to point a firearm at someone unless he intended to use it, he purchased the gun that killed Loera for the purpose of "self-protection," and he recently fired a test shot with that gun. Second, Rowell knew the gun was loaded. In fact, according to him, he brought it with him, after taking the safety off, for the specific purpose of protecting himself. And finally, according to Rowell, after Loera lunged at him, he drew his gun and pointed it at her when it accidentally went off.

Accordingly, even when we view the evidence in the light most favorable to Rowell and keep in mind his "false" half-cock theory, we are compelled to conclude that the evidence would not permit a rational jury to find that Rowell was unaware of the risk created by his bringing a loaded a firearm "for self-protection" to Loera's door. *See Thomas*, 699 S.W.2d at 849–50. Therefore, we conclude that the trial court properly denied Rowell's request for the jury to be instructed on criminally negligent homicide.

Further, even if the trial court erred by refusing to instruct the jury on criminally negligent homicide, the error would have been harmless. Rowell

received instructions on murder and manslaughter. Manslaughter requires proof of a less culpable mental state than murder—reckless versus intentional, respectively—and criminally negligent homicide requires proof of criminal negligence, which is a less culpable mental state than manslaughter. Under these circumstances, this makes manslaughter an intervening lesser-included offense.

A trial court's error of not instructing on a lesser-included offense is rendered harmless by the jury's failure to render a guilty verdict on an intervening lesser-included offense, if the jury's rejection of the intervening lesser-included offense indicates that it legitimately believed that the defendant was guilty of the greater, charged offense. *Masterson v. State*, 155 S.W.3d 167, 171–72 (Tex. Crim. App. 2005). That the jury concluded Rowell intentionally, rather than recklessly, caused Loera's death is a clear indication that it would not have concluded he negligently caused her death. Accordingly, we overrule Rowell's sole issue.

### Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

8